**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CECILIA ROSALES, *on behalf of herself, FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

v.

GREEN MAGIC EXCELLENT CLEANING CORP.,
JOHN DOE CORPORATIONS 1 – 100, and
INGRID ALMANZAR,

Defendants.

---

Case No:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff, CECILIA ROSALES ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, GREEN MAGIC EXCELLENT CLEANING CORP., JOHN DOE CORPORATIONS 1 – 100 (the "Corporate Defendants"), and INGRID ALMANZAR (the "Individual Defendant", together with the Corporate Defendants, the "Defendants") and states as follows:

## INTRODUCTION

1. Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. Seq.* ("FLSA"), she and similarly situated individuals are entitled to recover

from Defendants: (1) unpaid overtime premiums, (2) unpaid wages, including overtime, due to time-shaving, (3) unlawfully retained gratuities, (4) liquidated damages, and (5) attorneys' fees and costs.

2. Plaintiff additionally alleges that, pursuant to the New York Labor Law ("NYLL"), she and similarly situated individuals are entitled to recover from Defendants: (1) unpaid overtime premiums, (2) unpaid wages, including overtime, due to time-shaving, (3) unlawfully retained gratuities, (4) liquidated damages, (5) statutory penalties, and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391 because the events giving rise to this Complaint took place in this District and because Defendants' principal place of business is in this District.

## PARTIES

5. Plaintiff CECILIA ROSALES is a resident of Queens County, New York.

6. Corporate Defendant GREEN MAGIC EXCELLENT CLEANING CORP. is a domestic business corporation organized under the laws of the State of New York and authorized to do business in the State of New York, with a principal place of business and an address for service of process at 23-35 Steinway Street, Astoria, NY 11105. GREEN MAGIC EXCELLENT CLEANING CORP. provides housekeeping services for Defendants JOHN DOE CORPORATIONS 1 – 100 throughout New York, including but not limited to: Homewood Suites By Hilton, Hyatt House,

Hampton By Hilton, Boro Hotel, DoubleTree By Hilton, The Moore, Lex Hotel NYC, Made Hotel, Citadines Connect, and Courtyard by Marriott.

7. Individual Defendant INGRID ALMANZAR is a chief executive officer of Corporate Defendant GREEN MAGIC EXCELLENT CLEANING CORP. Individual Defendant INGRID ALMANZAR exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. Individual Defendant INGRID ALMANZAR exercises the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and Class Members at all locations operated by Corporate Defendant GREEN MAGIC EXCELLENT CLEANING CORP.. At all times, employees could complain to Individual Defendant INGRID ALMANZAR directly regarding any of the terms of their employment, and Individual Defendant INGRID ALMANZAR would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedules, compensation, or terminating or hiring such employees. Individual Defendant INGRID ALMANZAR exercises functional control over the business and financial operations of GREEN MAGIC EXCELLENT CLEANING CORP..

## JOINT EMPLOYER ALLEGATIONS

8. Corporate Defendants JOHN DOE CORPORATIONS 1-100 and GREEN MAGIC EXCELLENT CLEANING CORP. are joint employers under the FLSA and the NYLL, as they (1) have the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *See Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984).

9. More specifically, Corporate Defendant GREEN MAGIC EXCELLENT CLEANING CORP. maintains joint employment contracts with hotels across New York City, including JOHN DOE CORPORATIONS 1-100. Corporate Defendant GREEN MAGIC EXCELLENT CLEANING CORP. sends their employees to provide cleaning services for JOHN DOE CORPORATIONS 1-100.

10. All Defendants individually market and advertise their contribution to the Hotel. Specifically, GREEN MAGIC EXCELLENT CLEANING CORP. advertises and lists the Hotel and nine (9) other hotels together as their clients on their main website. *See* **Exhibit A**.

11. Employees of Corporate Defendant GREEN MAGIC EXCELLENT CLEANING CORP. are fully interchangeable among JOHN DOE CORPORATIONS 1 – 100. During Plaintiff's employment with Defendants, GREEN MAGIC EXCELLENT CLEANING CORP. frequently transferred employees among various hotels to perform work on an as-needed basis. For example, Plaintiff witnessed other employees being sent to other locations besides the Moore Hotel, where most of her shifts were. Moreover, Plaintiff was sent to cover shifts at two other hotels: Homewood Suites by Hilton, located at 312 West 37th Street, New York, NY 10018, and Marriott Courtyard JFK, located at 14511 North Conduit Avenue, Jamaica, NY 11436.

12. Corporate Defendant GREEN MAGIC EXCELLENT CLEANING CORP. manages the workforce jointly with JOHN DOE CORPORATIONS 1 – 100. For example, the Moore Hotel operated as one of Plaintiff's employers. However, GREEN MAGIC EXCELLENT CLEANING CORP. is the entity that administers Plaintiff's payroll.

13. Employees would be required to transfer supplies, such as cleaning equipment, between all Corporate Defendants.

14. JOHN DOE CORPORATIONS 1-100 and GREEN MAGIC EXCELLENT CLEANING CORP. jointly determined the work schedules of Plaintiff and the other cleaning and housekeeping workforce.

15. GREEN MAGIC EXCELLENT CLEANING CORP. jointly oversaw cleaning and housekeeping operations of JOHN DOE CORPORATIONS 1-100.

16. JOHN DOE CORPORATIONS 1-100 utilize GREEN MAGIC EXCELLENT CLEANING CORP. for their room cleaning services in the State of New York. All employees of GREEN MAGIC EXCELLENT CLEANING CORP. provide services that are directly essential to their businesses.

17. Plaintiff primarily worked at the Moore Hotel, which utilized the services of GREEN MAGIC EXCELLENT CLEANING CORP. and Individual Defendant INGRID ALMANZAR.

18. Defendants are associated and are joint employers, who act in the interest of each other with respect to their employees. Defendants have common policies and practices as to wages and hours and share control over Defendants' employees, dictating the times, places, and matters of Plaintiff's, FLSA Collective Plaintiff's and Class Members' employments. For example, Susana, a manager working for the Moore Hotel, directly supervised Plaintiff. Defendants directly and/or indirectly employed Plaintiff, FLSA Collective Plaintiffs and Class Members.

19. At all relevant times, Defendants jointly exercised formal and functional control as it relates to all employees including Plaintiff and Class Members. Defendants jointly exercised the power to fire and hire employees, supervise, and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and Class Members. For example,

Plaintiff was hired by GREEN MAGIC EXCELLENT CLEANING CORP., but was terminated by Susana, one of the managers at the Moore Hotel. Defendants issued and maintained employment records of Plaintiff, FLSA Collective Plaintiffs, and Class Members.

20. At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, the NYLL, and all regulations thereunder.

21. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

22. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including but not limited to tile and carpet cleaners, housemen, food and beverage staff, room inspectors, housekeepers, maids, cleaners, room attendants, and laundry attendants, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

23. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their (i) proper wages, including their overtime premiums at one and a half times their regular rates for all hours worked over forty (40) in a workweek, due to Defendants' policy of time-shaving; (ii) illegal retention of gratuities; (iii)

statutory penalties; (iv) liquidated damages; and (v) attorneys' fees and costs. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

24. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

25. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including but not limited to tile and carpet cleaners, housemen, food and beverage staff, room inspectors, housekeepers, maids, cleaners, room attendants, and laundry attendants, among others, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case (the "Class" or "Class Members").

26. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

27. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the

calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

28. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices by Defendants, as alleged herein, of Defendants' (i) failure to pay overtime premiums for all hours worked over forty (40) each workweek; (ii) failure to pay wages for all hours worked due to a policy of time-shaving; (ii) illegal retention of tips; (iii) failure to provide proper wage and hour notices, at dates of hiring and annually thereafter, per requirements of the New York Labor Law, and (iv) failure to provide proper wage and hour statements, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures of Defendants.

29. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

30. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly

situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

31. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

32. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and the New York Class within the meaning of the New York Labor Law;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d) Whether Defendants properly notified Plaintiff and Class Members of their hourly rates and overtime rates;

e) Whether Defendants paid Plaintiff and Class Members the proper compensation for all hours worked, including overtime hours, under the New York Labor Law;

f) Whether Defendants operated their business with a policy of not compensating employees for all hours worked, due to time-shaving;

g) Whether Defendants informed Plaintiff and Class Members of how tips were to be distributed;

h) Whether Defendants accurately tracked the amount of tips earned by Plaintiff and Class Members each day and maintained records thereof;

i) Whether Defendants properly distributed all tips earned by Plaintiff and Class Members;

j) Whether Defendants provided Plaintiff and New York Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law; and

k) Whether Defendants provided Plaintiff and New York Class Members with proper wage statements with each payment of wages, as required by the New York Labor Law.

## STATEMENT OF FACTS

33. In or around December 2023, Plaintiff was hired by Defendants to work as a housekeeper for Defendants at the Moore Hotel, located at 300 West 22nd Street, New York, NY 10011. Plaintiff was employed by Defendants until on or around July 11, 2024.

34. Throughout her employment, Plaintiff worked five (5) days per week. Plaintiff was always scheduled by Defendants to start her shift in the morning at around 9:00 a.m., and her shift was scheduled to end at 6:30 p.m.. At all relevant times, Plaintiff worked more than forty (40) hours per week. FLSA Collective Plaintiffs and Class Members worked similar hours.

35. Throughout her employment, Plaintiff was always compensated at an hourly rate of sixteen dollars ($16.00) per hour. Plaintiff was always paid by direct deposit on a weekly basis. At all relevant times, Defendants paid FLSA Collective Plaintiffs and Class Members at similar hourly rates by direct deposit on a weekly basis.

36. At all relevant times, Defendants failed to compensate Plaintiff, FLSA Collective Plaintiffs, and Class Members for their actual hours worked, due to time shaving. Throughout their employment with Defendants, Plaintiff's, FLSA Collective Plaintiffs', and Class Members' hours were not tracked, because Defendants did not use a timekeeping system. While Plaintiff,

FLSA Collective Plaintiffs, and Class Members were required to sign a sign-in sheet at the start of every shift, their actual hours worked were never recorded.

37. At all relevant times, Defendants time shaved approximately three (3) hours of every shift Plaintiff worked. Even though Plaintiff worked up to nine and one-half (9.5) hours every day, only six and one-half (6.5) of these hours were actually compensated. As a result of Defendants' time shaving, Plaintiff was not properly compensated for all hours worked, including overtime compensation for all hours worked over forty (40) each week. FLSA Collective Plaintiffs and Class Members were similarly subjected to Defendants' time shaving and were not paid for all hours worked.

38. During her employment with Defendants, as detailed above, Plaintiff regularly worked in excess of forty hours in a workweek, however, Defendants failed to pay her proper overtime compensation at a rate of 1.5 times her regular hourly rate for all overtime hours worked. Defendants similarly failed to compensate overtime hours to FLSA Collective Plaintiffs and Class Members.

39. As a result of Defendants' time shaving policy, Plaintiff, FLSA Collective Plaintiffs, and Class Members were not compensated for approximately three (3) hours every workday (15 hours for a 5-workday workweek), some of which should have been paid at an overtime rate.

40. Throughout Plaintiff's employment, Defendants never distributed any tips to Plaintiff, thus depriving her of the tips to she had earned. As a housekeeper, Plaintiff was required to provide hospitality services to hotel guests, including cleaning guest rooms, making beds, delivering amenities, replacing toiletries, vacuuming hallways and public areas, accommodating special requests, among other duties, and customers often left tips for Plaintiff in

the rooms that Plaintiff serviced. However, Plaintiff would notice her supervisor "Neta" enter all the rooms that were to be cleaned by Plaintiff and proceed to take all leftover tips before Plaintiff entered. As a result, Defendants never distributed any tips to Plaintiff. FLSA Collective Plaintiffs and Class Members were similarly deprived of tips they had earned, due to Defendants' illegal retention of gratuities.

41. Further, due to Defendants' failure to maintain any tip sheets or tip records earned by Plaintiff, FLSA Collective Plaintiffs, and Class Members, Defendants were able to hide the tips which should have been owed to Plaintiff, FLSA Collective Plaintiffs, and Class Members.

42. At all relevant times, Defendants knowingly and willfully illegally retained tips from Plaintiff, FLSA Collective Plaintiffs, and Class Members.

43. At all relevant times, Plaintiff and Class Members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

44. In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

45. Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp.,* 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time actually worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage

statement should include every hour actually ‘worked’ by the employee”) (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) (“Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours actually worked”) (emphasis added).

46. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs*., 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

47. Here, Defendants’ failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants’ conduct actually harmed Plaintiff and Class Members. Defendants’ failure to provide wage notices and paystubs listing proper rates of pay, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff’s and Class Members’ rights. This conduct ensured Defendants’ ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants’ failure to provide

wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

48. Had the wage statements Defendants provided to Plaintiff and Class Members accurately listed the proper rates of pay and actual hours worked by Plaintiff and Class Members, as required by law, Defendants would have had to either (a) increase the wages to correspond to the proper rates of pay and hours of work that Plaintiff and Class Members were legally entitled to; or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the proper rates of pay and hours of work that Plaintiff and Class Members were legally entitled to. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

49. The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

50. Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

51. The direct effect of understating the proper hourly rate of employees is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820

N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

52. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

53. "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, *4 (S.D.N.Y. July 14, 2022)).

54. Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

55. Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id.* at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id.* Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id.* "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id.*

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

56. The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees as well as merely misreported their income. But

this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id.* Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

57. Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id.* ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

58. The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

59. Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that

Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

60. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

61. Defendants knowingly and willfully operated their business with a policy of not paying overtime premiums for all hours worked over forty (40) each workweek to Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

62. Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs, and Class Members for all hours worked, including overtime, due to time shaving, in violation of the FLSA and the NYLL.

63. Defendants knowingly and subjected Plaintiff, FLSA Collective Plaintiffs, and Class Members to an illegal tip retention policy, in violation of the NYLL.

64. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and New York Class Members with wage notices and accurate wage statements, in violation of the NYLL.

65. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

66. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

67. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

68. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

69. At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

70. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs overtime premiums for all hours worked in excess of forty (40) each workweek.

71. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their wages, including overtime, due to time-shaving.

72. At all relevant times, Defendants had a policy and practice that illegally retained gratuities from Plaintiff and FLSA Collective Plaintiffs.

73. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these

records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

74. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper overtime premiums, when Defendants knew or should have known such was due.

75. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

76. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

77. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid overtime premiums, unpaid wages, including overtime, due to time-shaving, illegally retained gratuities, and liquidated damages.

78. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

79. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

80. At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

81. At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class Members their proper wages, including overtime, in direct violation of the NYLL.

82. At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class Members their proper wages, including overtime, due to time-shaving, in direct violation of the NYLL.

83. Defendants willfully violated the rights of Plaintiff and Class Members by illegally retaining gratuities, in direct violation of the NYLL.

84. Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

85. Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law.

86. Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

87. Due to the Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid overtime wages, unpaid wages due to time-shaving, illegally retained gratuities, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages, including overtime, due to time-shaving due under the FLSA and the NYLL;

d. An award of gratuities illegally retained by Defendants, due under the FLSA and the NYLL;

e. An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

f. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

h. An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

i. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

j. Designation of this action as a class action pursuant to F.R.C.P. 23;

k. Designation of Plaintiff as Representative of the Class; and

l. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: September 30, 2025
New York, New York

Respectfully submitted,

By: /s/ *C.K. Lee*
C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*